UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

MELISSA KUZINITS,

                                    Plaintiff,

                  — against —

JFS, INC.,

                              Defendant.

----------------------------------------------------------------------x

_____

ECF CASE

**COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff, Melissa Kuzinits (*"Kuzinits"* or *"Plaintiff"*) by her attorneys, Sack & Sack, LLP, file the following Complaint against her former employer, Defendant JFS, Inc. (*"JFS"* or *"Defendant"*).

Ms. Kuzinits, as and for her complaint, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff complains that her former employer, JFS, engaged in the unlawful discrimination and subsequent retaliation of Plaintiff in the terms, conditions, and privileges of her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, ("*Title VII*") based upon her sex, female.

2.      Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of her employment in violation of New York State New York State Human Rights Law, Executive Law § 290 et seq. ("*NYSHRL*") and the Administrative Code of the City of New York § 8-101 et seq. ("*NYCHRL*") based upon her sex, female.

3.      Plaintiff files this action to seek monetary relief for the denial of equal employment opportunity and for the unlawful employment practices of Defendant.

4.      Plaintiff further complains that she has suffered, is suffering and will continue to suffer severe economic and non-economic damages because Defendant deprived Plaintiff of her employment rights in violation of federal and state law.

5.      Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("*EEOC*"), which bore charge number 520-2015-01776.

6.      Plaintiff timely brings this action within ninety (90) days of the receipt of a Notice of Right to Sue Letter ("*NORTS Letter*"), issued by the EEOC on February 17, 2016.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In

addition, the Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).  Venue in this matter is properly laid in the District because the violations of the Plaintiff's federal and state civil rights occurred during the course of their employment at branch office locations in this District, because the Defendant does business in this District, and because most of the fact witnesses and evidence are common to or most convenient to this District.

## PARTIES

9.      Plaintiff is an individual who, at all times relevant to this Complaint, has resided and currently resides at 456 9th Street, #2, Brooklyn, NY 11215.

10.     From October 2013 until her unlawful termination on January 26, 2015, Plaintiff was employed by JFS.

11.     At all times relevant herein, Plaintiff was an "employee" within the meaning of 42 U.S.C.A. §§ 2000e, et seq., § 296 of the NYSHRL and under § 8-102(1) of the NYCHRL and thus, afforded protection against sexual harassment and discrimination and retaliation in employment on the basis of her sex, female.

12.     At all times relevant to this Complaint, Defendant is a corporation licensed to do business in the State of New York, with offices located at 525 West 26th Street, 4th Floor, New York, New York 10001, County of New York.

13.     At all times relevant herein, Defendant is an "employer" within the meaning of 42 U.S.C.A. § 2000e-(b), § 292 of the NYSHRL and under § 8-102(5) of the NYCHRL.

3

## FACTS COMMON TO ALL COUNTS[1]

The claims set forth herein arise from the following set of facts:

14.     Plaintiff is a married woman that was pregnant with twins, and is protected under the Federal, State and City discrimination statutes protecting employees.

15.     In May 2004, Plaintiff graduated with a Cum Laude Bachelor's degree in Fashion Merchandising and Management from the Fashion Institute of Technology.  Plaintiff continued with Professional Development courses in fabric and color in 2009 and 2010 also at the Fashion Institute of Technology.

16.      Plaintiff is a talented and experienced Product Developer and Merchant, and worked for Defendant JFS Inc. starting in October 2013.

17.     Plaintiff's previous employer was Elie Tahari LTD ("*Tahari*").  In August 2004, Plaintiff began her employment at Tahari as an Associate Product Manager of Off Price.  In this role, she assisted in all Merchandising, Fabric development and Product development aspects for 3 lines of the Off Price division.  In less than a year, she took over the same three departments in the private label division as well.

18.     In December 2006, Plaintiff was promoted to Product Manager, Off Price and Private Label where she was responsible for providing fit approvals and managed the print and color approval process.  She held this position for three and a half years with increasing responsibility.

19.     In June 2010, Plaintiff was promoted to Director of Development and Merchandising, Off Price and T Tahari.  In her new role, Plaintiff executed the seasonal line

---

1. All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Plaintiff.

plans, created Annual/Seasonal Development calendars, managed the development budget and participated in key market appointments with buyers.

20.     In April 2012, Plaintiff was promoted to Senior Director of Development and Merchandising, Off Price and T Tahari.   She was responsible for driving the business of approximately $125 million combined wholesale of Off Price, T Tahari and Collection outlet product.   Plaintiff was managing all aspects of Product development, Fabric development and Merchandising for 5 lines.   She helped to implement garment programs resulting in over 120% YOY revenue growth vs. projections for 3 years in a row for Off Price.   In this role, Plaintiff managed a team of five (5).

21.     In September 2013, Plaintiff ended her 9-year tenure at Tahari after she accepted an offer from JFS Inc.

**Hiring- Duties**

22.     On October 7, 2013, Plaintiff began her employment as Lead Product Developer, Women's Wovens on behalf of the Defendant.

23.     In this capacity, Plaintiff was responsible for training, managing and motivating her team of three direct reports.

24.     Plaintiff was hired by Karen Franke, Respondent's Vice President of Production, and Barbara Gingras, Respondent's Senior Vice President.

25.     When Plaintiff commenced her employment, her department was considered an "underperforming" department that needed processes and procedures put into place.

26.     At the start of her employment, Plaintiff's compensation was $148,000 annually.

## Accomplishments- Performance

27.     From the commencement of her employment, up until and continuing through the date of her termination, as direct result of her hard-work, savvy business acumen, expert communication, team building and product development skills, Plaintiff successfully implemented and developed new processes and procedures.

28.     For example, Plaintiff was responsible for starting weekly team touch bases with her entire team to manage the team's workload and focus on time sensitive issues.  Plaintiff created a weekly agenda and reviewed each task with the entire team in order for them to understand the full picture and what their boss or counterparts were doing that they could learn from.

29.     In addition, Plaintiff was able to significantly reduce overdevelopment, which saved the company money overall in increasing adoption rates and to push her team to receive 96% of development samples on time by the time of her termination.  When she started her employment with JFS, the development samples were being sent five to seven weeks late and in some cases not at all since the team was not following up on them properly.  With her dedication to pushing her team for updates on all styles and following daily conversions with the vendors, Plaintiff was able to make this happen.

30.     Plaintiff was also able to work with her two same level colleagues Erika Doherty, Sr. Product Developer, Knits and Benjara Kendrick, Sr. Product Developer, Sweaters of the Respondent to streamline our processes.  Before this, Karen Franke would have them all work separately and differently.

31.     In April 2014, Plaintiff received a raise in her Annual Review for her 2013 contributions.  Her compensation was increased to $150,960 annually.

6

32.     In around the same month, Plaintiff's supervisor, Karen Franke, was now reporting to a new hire Peter Lee ("*Lee*"), Vice President of Product Development and Licensing.

33.     In the beginning of August 2014, Peter Lee met with Plaintiff and explained that he knew that things were difficult and disorganized but told her that she should be patient for things to come.

34.     At the end of August 2014, as a result of her hard work and acumen, Plaintiff was promoted to the role of Product Manager, Women's Wovens.  Along with an increase in salary, Plaintiff had an additional team member added to her team, Venus Badillo, Assistant Product Developer, formally reporting into Karen Franke.  With this addition, she had two direct reports, each with an assistant under them (four total on team).  Plaintiff's compensation was increased to $158,000 annually.

35.     In early September 2014, an official email went out companywide to announce Plaintiff's promotion and that she would continue to report to Karen Franke but that she would also be supporting Peter Lee.  Such emails were normally only sent out for Executives.

36.     In October 2014, Plaintiff was selected to represent the Product Development Team on the biannual Trip to Asia.  This two-week trip provides the participants with nurturing vendor relationships and working hand and hand with design to monitor current sample development and to put in new styles based on new trends.  After planning the flights and accommodations for the team, Peter Lee expressed that the trip would be postponed until further notice.

37.     In October 2014, an email was sent out to the entire Joe Fresh Vendor Base from the Vice President of Sourcing, Yolanda Morell, to begin sending all final (TOP) samples to

Karen Franke and Plaintiff, even though she didn't handle knits or sweaters.  After this email was sent, all received samples were funneled through Plaintiff.

38.    Also starting in October 2014, Plaintiff began to have weekly one-on-one touch bases with Peter Lee.  Lee would talk about the direction of the company and push Plaintiff for opinions on other staff members.

39.    On November 14, 2014, Plaintiff was selected to represent the NY Product Development Team at meetings in the Toronto office with Priscilla Shum, Head Merchant, and Joe Mimran, President of the Respondent.  Usually, her supervisor Karen Franke handled these meetings.

40.    During the week of November 18, 2014, Plaintiff's manager Karen Franke was laid off.  Plaintiff now reported directly into Peter Lee, Vice President of Product Development and Licensing.

41.    In addition, during the week of November 18, 2014, while Plaintiff was in Toronto, Peter Lee met with her team and her two same level colleagues Erika Doherty, Sr. Product Developer, Knits and Benjara Kendrick, Sr. Product Developer, Sweaters of the Respondent, to tell them that he would like one point person for the team, and that Plaintiff would be the point person.  The two same level colleagues interpreted this as Plaintiff becoming their manager (which was never expressed to Plaintiff).

42.    Also in that week, Lee met with Heather Krauza, Head of Technical Design, and told her that Plaintiff would now be responsible for all expenses and invoices.  Karen Franke handled these tasks previously.

43.    Upon her return from the Toronto trip, Plaintiff held the first official Recap of her trip in a meeting with the entire Product Development Team and a separate meeting with the

8

entire Design Team.  She wrote up a recap, reviewed it with the teams, showed photos and made a complete binder for all teams to reference.  Prior to this, both the Design team and Product Development team had never had complete information of what occurred during the trip nor the lessons to learn from for the next season's development.

44.      In the end of November 2014, Lee began giving Plaintiff more tasks that Karen Franke previously handled such as the Seasonal Product Development Calendar and Week by Week Design Calendar.

## **Reorganization**

45.      In early November 2014, Lee called a meeting with the Product Development, Design and Technical Design Teams to explain that that the company was in a great place financially and growing significantly internationally due to new licensing agreements.  However, he also stated that restructuring would occur soon in order to improve role clarity and reduce structural layers.

46.      In late November 2014, JFS underwent a structural reorganization of senior management.

47.      As a result of the reorganization, Plaintiff's supervisor, Karen Franke, was released of her position and Plaintiff began to report directly into Peter Lee, Vice President of Product Development and Licensing.

48.      In sum, even after the reorganization and increase in responsibilities, Plaintiff's performance continued to exceed those of her peers.  She continued to motivate her team even up to the morning of her termination in a weekly Team Touch Base.

## Discussion of Pregnancy and Maternity Leave
### Background

49.     Upon starting with JFS Inc. in 2013, Plaintiff was given its 2012 Employee handbook, which did not have any policy listed regarding maternity leave or FMLA.  No employee had been pregnant before in the New York Design office.

50.     The Loblaw's (owner of JFS Inc.) intranet stated that the Maternity/Paternity Leave policy paid 75% of pre-leave gross base salary for up to 17 weeks as long as an employee worked 52 consecutive weeks.

### Communicating the Pregnancy News

51.     On November 12, 2014, Plaintiff told her manager Karen Franke that she was pregnant in their weekly touch base.  She told Plaintiff that she should also tell Lee as soon as possible.

52.     On November 14, 2014, while on the phone (since Plaintiff was out sick with a bad cough) in a weekly touch base after Lee explained that she was chosen to go to Toronto, Plaintiff told him that she was pregnant.  He congratulated her and kept the conversation short.

53.     During the week of December 8, 2014, Plaintiff met with HR Senior Coordinator, Brittany Ray, and told her that she was pregnant with twins.  Ray explained that she didn't have Defendant's maternity policy on hand and would get back to Plaintiff as soon as possible. Two days later, Ray followed up with an email stating that she was still waiting for the information.

54.      On December 12, 2014, Plaintiff told Lee that she would be sharing the pregnancy news with the office in the next week.  Plaintiff then communicated to him that she was expecting twins.  Lee expressed his congratulations and began to talk about how many twin friends he has and what a beautiful connection they have.

10

55.     After following up with Ray several times, on January 4, 2015, she sent Plaintiff an email with the Short Term Disability information which stated that an employee could receive up to $170/week for up to 26 weeks and FMLA which says that an employee is entitled to up to 12 weeks unpaid leave.  She also sent Plaintiff a new employee handbook dated 2014.  Plaintiff immediately replied "**Yes, thank you for the Short Term Disability information but I do not see Joe Fresh's maternity leave info.  Are you saying that Joe Fresh doesn't provide any compensation during maternity leave?  I find this hard to believe when Loblaw provides 75% pay for 17 weeks.**"

56.     On January 5, 2015, Ray replied to Plaintiff's email stating that the maternity policy was different in Canada and only reiterated the Short Term Disability information.  Plaintiff then asked Ray if Jennifer Maccarone, Director of HR in Canada, would be the next level to discuss this with and she replied "**Yes.**"

57.     Plaintiff wanted to discuss this issue with her manager Peter Lee, prior to pushing it further with HR.  Plaintiff wanted him to be aware that the company policy was not in line with the industry standard but since all of her touch bases with Lee were cancelled, she was unable to talk to him and get his opinion.  Plaintiff planned on discussing it with him on January 26, 2015 when he was back in the office from Toronto, but she was terminated on that day.

**JFS Terminates Plaintiff's Employment in Retaliation to Her Request for Maternity Leave Information and Discrimination Against her Short Term Disability of Being Pregnant**

58.     Starting on December 19, 2014 and immediately following her pregnancy announcement, all of her weekly touch bases with Peter Lee were cancelled due to no

explanation or him being in Toronto.  Plaintiff was forced to sit with lists of issues and unanswered questions.

59.      In January 2015, Lee barely paid attention to Plaintiff and no longer kept her in the loop.  Plaintiff was even working on the urgent Week By Week Design calendar, but he never made time to meet with her.

60.      On January 26, 2015, Plaintiff was called into the conference room with Human Resource Senior Coordinator, Brittany Ray, Peter Lee, VP of Product Development, and Henriette Ernst, Senior Vice President of Design of the Respondent.  Ray explained that it would be considered Plaintiff's last day at JFS and that she would lose her benefits on January 31, 2015.

61.      Lee explained that letting Plaintiff go had nothing to do with her performance and that it was a matter of restructuring that the Product Development department was being moved to Canada.  Both Lee and Ernst expressed that they would highly recommend Plaintiff and would try to help her get a job "**when I was ready.**"  This statement was made more than once in the conversation.

62.      Plaintiff's two direct reports, Meredith Franks, Product Development Manager and Kristin LaMastra, Product Developer were kept on the job.  Both employees do not have any children, nor are they pregnant.

63.      The colleague that is now handling all Wovens Product Development in Canada is Catherine Lantain, Senior Product Development Manager of the Respondent.  Lantain does not have any children, nor is she pregnant.

64.     It is clear that JFS made an adverse employment decision concerning Plaintiff based upon her pregnancy.

| LEGAL CLAIMS |
| --- |

## AS AND FOR A FIRST CAUSE OF ACTION

### SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; 42 U.S.C.A. § 2000E

65.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

66.     Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's sex, female, and show an animus of sex bias.

67.     Defendants have undertaken these discriminatory practices willfully or with reckless disregard for the Plaintiff's rights protected under Title VII.

68.     These employment practices violate § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

69.     As a result of Defendant's actions, Plaintiff is unable to return to comparable employment.

70.     The aforementioned acts of Defendant constitutes unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender and in retaliation against her in violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e.

71.     As a proximate result of Defendant's aforementioned sex discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

72.     As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

73.     As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

74.     As a result of the foregoing, Plaintiff is entitled to recover from Defendant, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

75.     As a result of the foregoing acts, Plaintiff is entitled to recover an amount to be determined at trial in compensatory damages from Defendant.

76.     In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages in an amount to be determined at trial to adequately punish Defendant, jointly and severally, and to deter Defendant from continuing and repeating such conduct in the future.

## AS AND FOR A SECOND CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF GENDER UNDER
### NEW YORK STATE HUMAN RIGHTS LAW §296(1)(A)

77.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

78.     Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's gender, female, and show an animus of gender bias.

79.     As a result of Defendant's actions, Plaintiff is unable to return to comparable employment.

80.     The aforementioned acts of Defendant constitutes unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender and in retaliation against her in violation of the provisions of the NYSHRL § 296(1)(a).

81.     As a proximate result of Defendant's aforementioned sex discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

82.     As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

83.     As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

84.     As a result of the foregoing, Plaintiff is entitled to recover from Defendant an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

85.     As a result of the foregoing acts, Plaintiff is entitled to recover an amount to be determined at trial in compensatory damages from Defendant.

86.     In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages in an amount to be determined at trial to adequately punish Defendant and to deter Defendant from continuing and repeating such conduct in the future.

## AS AND FOR A THIRD CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF GENDER UNDER
### NEW YORK CITY HUMAN RIGHTS LAW § 8-107

87.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

88.     Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's gender, female, and show an animus of gender bias.

89.     Defendant's animus towards Plaintiff's gender, female, is revealed in instances where similarly situated male employees were treated differently than Plaintiff in respect to of their terms, conditions, and privileges of employment.

16

90.     As a result of Defendant's actions, Plaintiff is unable to return to comparable employment.

91.     The aforementioned acts of Defendant constitutes unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender and in retaliation against her in violation of the provisions of the NYCHRL § 8-107.

92.     As a proximate result of Defendant's aforementioned sex discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

93.     As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

94.     As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

95.     As a result of the foregoing, Plaintiff is entitled to recover from Defendant, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

96.     As a result of the foregoing acts, Plaintiff is entitled to recover an amount to be determined at trial in compensatory damages from Defendant.

97.     In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and

Plaintiff is entitled to punitive damages in an amount to be determined at trial to adequately punish Defendant and to deter Defendant from continuing and repeating such conduct in the future.

## AS AND FOR A FOURTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; 42 U.S.C.A. § 2000E

98.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

99.     Based upon the aforementioned facts, Plaintiff had reasonable belief that Defendants were engaged in unlawful conduct under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e.

100.     Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC.

101.     Defendant had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of sexual harassment and discrimination to Defendants and appropriate authorities, including the EEOC.

102.     As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC, Defendant engaged in adverse treatment of Plaintiff, including, inter alia, demoting Plaintiff and terminating her employment.

103.     Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

104.    The aforementioned acts of Defendant constitute unlawful retaliation against Plaintiff in violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e.

105.    As a proximate result of Defendant's aforementioned retaliation against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

106.    As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

107.    As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

108.    As a result of the foregoing, Plaintiff is entitled to recover from Defendant, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

109.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount to be determined at trial in compensatory damages from Defendant.

110.    In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages in an amount to be determined at trial to adequately

19

punish Defendant and to deter Defendant from continuing and repeating such conduct in the future.

## AS AND FOR AN FIFTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW §296(1)(A)

111.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

112.   Based upon the aforementioned facts, Plaintiff had reasonable belief that Defendant were engaged in unlawful conduct under NYSHRL § 296 (1) (a).

113.   Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC.

114.   Defendant had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC.

115.   As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC, Defendant engaged in adverse treatment of Plaintiff, including, inter alia, demoting her and terminating her employment.

116.   As a result of Defendants' actions, Plaintiff is unable to return to comparable employment.

117.   The aforementioned acts of Defendant constitute unlawful retaliation against Plaintiff in violation of the provisions of NYSHRL § 296 (1) (a).

118.    As a proximate result of Defendant's aforementioned retaliation against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

119.    As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

120.    As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

121.    As a result of the foregoing, Plaintiff is entitled to recover from Defendant, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

122.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount to be determined at trial in compensatory damages from Defendant, jointly and severally, in addition to all other amounts sought herein.

123.    In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages in an amount to be determined at trial to adequately punish Defendant, jointly and severally, and to deter Defendant from continuing and repeating such conduct in the future.

## AS AND FOR A SIXTH CAUSE OF ACTION

**RETALIATION IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW § 8-107**

124.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

125.    Based upon the aforementioned facts, Plaintiff had reasonable belief that Defendant were engaged in unlawful conduct under NYCHRL § 8-107.

126.    Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC.

127.    Defendant had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of sexual harassment and discrimination to Defendants and appropriate authorities, including the EEOC.

128.    As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of sexual harassment and discrimination to Defendant and appropriate authorities, including the EEOC, Defendant engaged in adverse treatment of Plaintiff, including, inter alia, demoting her and terminating her employment.

129.    As a result of Defendants' actions, Plaintiff is unable to return to comparable employment.

130.    The aforementioned acts of Defendant constitute unlawful retaliation against Plaintiff in violation of the provisions of NYCHRL § 8-107.

131.    As a proximate result of Defendant's aforementioned retaliation against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

132.    As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

133.    As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

134.    As a result of the foregoing, Plaintiff is entitled to recover from Defendant, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

135.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount to be determined at trial in compensatory damages from Defendant.

136.    In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages in an amount to be determined at trial to adequately punish Defendant, jointly and severally, and to deter Defendant from continuing and repeating such conduct in the future.

## ATTORNEY'S FEES AND COSTS

137.    Attorney's fees and costs are warranted in this matter as the undersigned, on behalf of Plaintiff, have in good faith, attempted to negotiate a reasonable resolution with

Defendant without having to refer this matter to this forum for adjudication, determination and final resolution on the merits.

## PUNITIVE DAMAGES – BAD FAITH

138.    It is presumed that parties to contracts undertake their respective obligations in good faith, with intent to deal fairly.   In light of Defendant's obvious and blatant bad faith, wrongdoing and breach of other duties, ***punitive damages*** should be assessed against Defendant so that they be deterred from attempting such harmful employment practices in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

I.    An award of Plaintiff's actual damages in respect of loss of wages, promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%;

II.    An award of compensatory damages in an amount to be determined at trial;

III.    An award of punitive damages in an amount to be determined at trial;

IV.    An order enjoining Defendant from engaging in the wrongful practices alleged herein;

V.    An award of prejudgment interest, costs and attorney's fees; and

VI.    Such other and further relief that the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury

on all questions of fact raised by the complaint.


Dated:        New York, New York
              May 17, 2016


                        Respectfully submitted,


                        **SACK & SACK, LLP**


                              */s/ Eric Stern*
                        By:   _____
                              Eric Stern, Esq.  (ERS 1918)


                        **Attorneys for Plaintiff**
                        **Melissa Kuzinits**
                        70 East 55th Street, 10th Floor
                        New York, New York 10022
                        Tel.: (212) 702-9000
                        Fax: (212) 702-9702

25